UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          Case. No. 10-20736
                                                     Honorable David M. Lawson

v.

TONY ANDREW GILLESPIE,

        Defendant.

_____/

**<u>OPINION AND ORDER DENYING MOTION TO SUPPRESS EVIDENCE</u>**

On January 27, 2011, the defendant filed a motion to suppress evidence found during a traffic stop and a protective sweep of his residence. The Court held an evidentiary hearing on April 18, 2011, after which the Court made findings of fact. The Court then directed the parties to submit supplemental briefs addressing three specific questions. Those briefs have been received and the matter is ready for decision. The Court finds that the "protective sweep" of the residence of the defendant's residence at 9390 Patton, Detroit, Michigan was constitutionally invalid, the search warrant affidavit contained sufficient information beyond the illegally discovered evidence to establish probable cause, and the firearms found in the residence inevitably would have been discovered during the execution of the search warrant. Therefore, the defendant's motion to suppress evidence will be denied.

I.

The facts of the case leading to the defendant's three-count indictment are well known to the parties and were developed in some detail at the evidentiary hearing. The indictment, filed on December 7, 2010, charges the defendant with possession with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1) (Count 1), based on the crack cocaine that was found in his car;


possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c) (Count 2), based on his possession of the following: one Manchester Arms Commando 45, .45 caliber rifle, serial number 4R00551, one Norinco SKS 7.62mm rifle, serial number 9316090, one FED AK-47 type rifle, serial number SM26492, and one FN handgun, serial number 386181725; and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count 3), because he was a convicted felon in possession of the four firearms described in Count 2.

According to the hearing testimony, on November 9, 2010, Officer James Wiencek of the Detroit Police Department (DPD) received information from a known but previously unused informant about a person known as "Ton" who was selling crack cocaine from a house on the northeast corner of Patton and West Chicago Streets in Detroit. The informant gave other details, which Wiencek included in a search warrant affidavit, as follows:

> [O]n 11-09-10 affiant received information from an as yet unsigned and unused source regarding narcotics and firearms trafficking. Source stated a person known only as "Ton" was selling from a house on the North East corner of Patton and W. Chicago. Source stated the house could easily be identified by the Gray Dodge minivan in the driveway in clean factory condition . . . as well as a Gray two tone Ford explorer . . . . Source further stated "Ton" sells crack cocaine off a "dope mic" telphone numbers 313-283-3630 as well as 313-425-1883. "Ton" also has multiple firearms and keeps two handguns in the center counsel of the minivan behind the radio. One was described as a Kimber and the other a Ruger. Source also stated "Ton" has multiple guns split between two narcotics locations, one the Patton location. Source stated he has seen one fully automatic .380 caliber that looks like a Mac-11 this weapon switches from single fire to full auto. Also inside the Patton location or the location 2 or 3 AK-47 style assault rifles, one AR-15, and approximately 6 handguns one with a laser and one a 5x5.7 caliber.

Pl.'s Resp. to Def.'s Mot. to Suppress, Ex. 1, Search Warrant and Application aff.

Later on November 10, 2010, the police stopped Kristy Harrell while driving the Dodge Minivan mentioned above for failure to wear a seatbelt. Wiencek responded to the scene; when he looked inside the vehicle, he saw an improperly-fitted aftermarket stereo system at the center

console and observed a handgun through the gaps in the console. He arrested Ms. Harrell for having a concealed weapon in a motor vehicle. Wiencek asked Ms. Harrell if Tony Gillespie used the names "Ton" and "Grip," and she responded affirmatively. Ms. Harrell admitted that the found gun was not registered to her. But Ms. Harrell had a concealed weapons permit and was released from custody once it was confirmed.

Before being transported to the defendant's residence, Ms. Harrell agreed to talk to Officer Wiencek, but invoked her right to counsel once advised of her *Miranda* rights. When Officer Wiencek asked Ms. Harrell if she would consent to a search, she replied, "No. Get the search warrant. I don't want him mad at me." Officer Wiencek informed her that denial of consent was her right under the law, but asked if they could perform a "protective sweep" of the house on Patton Street while waiting for the search warrant. The police officers testified that Ms. Harrell gave consent, which Ms. Harrell denied.

At 8:45 p.m., approximately twenty minutes after Ms. Harrell's stop, Detroit Police Sergeant Jason Sloan and Officer Lawrence Mitchell observed a silver/gray Ford Explorer traveling westbound on West Chicago turn left onto Patton without signaling. As the officers caught up to the Explorer, it turned left into the driveway at 9390 without signaling and came to a stop. The officers pulled in behind the Explorer, which was registered to Kristy Harrell. Sgt. Sloan made contact with the driver, Tony Gillespie, as he was exiting the Explorer, and Officer Mitchell went to the passenger side of the Explorer. Sgt. Sloan requested defendant's driver's license and proof of insurance, and the defendant replied that his driver's license was suspended. As Sgt. Sloan placed defendant under arrest, Officer Mitchell observed a knotted bag containing three rocks of suspected

crack cocaine and one round of 5x5.7 ammunition in plain view in the cup holder in the center console of the Explorer.  Defendant was also in possession $1,470 in U.S. currency.

At 10:05 p.m., other officers drove Ms. Harrell home to the residence on Patton she shared with the defendant while Officer Wiencek prepared a search warrant and supporting affidavit. Several other people, including two adults and two children, were present at the Patton house when the officers and Ms. Harrell arrived.  Ms. Harrell and the other occupants waited in the living room while officers conducted a protective sweep of the house.  While conducting the sweep, officers observed long guns in the closet of the northeast bedroom, which also contained adult men's and women's clothing.

Officer Wiencek prepared a search warrant affidavit seeking authority to search the Patton residence and seize, among other things, controlled substances and firearms.  The search warrant affidavit included information about the guns discovered in the closet during the protective sweep, plus the other information quoted earlier.  The search warrant was reviewed and signed by a state court magistrate shortly after midnight on November 11, 2011; the Detroit police executed the warrant shortly thereafter.  During the search of the Patton residence, officers found the firearms identified in the indictment in the closet of the northeast bedroom, ammunition, magazines, and equipment used in the manufacture and distribution of crack cocaine.  In a subsequent, *Miranda*-prefaced interview with Officer Wiencek, defendant admitted that he sells crack cocaine and that the firearms found in the Patton dwelling and the Kimber handgun found in the Dodge minivan belonged to him.

At the conclusion of the evidentiary hearing, the Court made several findings of fact on the record and directed that additional briefs be filed to address consequential legal issues. The Court determined that:

1. The informant officer Sloan relied on was a person who had apparent firsthand information, but had never been used or provided reliable information to the Detroit Police Department in the past.

2. The informant provided information that alerted the officers that the defendant was suspected of dealing in narcotics out of his home on 9390 Patton, Detroit, Michigan, which is located near Patton and West Chicago Road.

3. The informant provided information describing the types of vehicles that were regularly used by the defendant and that would be found at the house.

4. Sloan was with his partner after Ms. Harrell was stopped in the minivan, observing the area to determine if the defendant would return. The in-car video shows that after the defendant's Explorer was seen making a left turn off of Chicago going southbound on Patton, Sloan pulled out in his car and the Explorer turned left into the driveway without signaling. Therefore, there was a valid reason to make a traffic stop.

5. The defendant exited the vehicle by the time the police car pulled into the driveway behind him. He was questioned, handcuffed, and arrested at the time that he admitted that he did not have a valid driver's license on him and that it was suspended. The defendant was validly placed under arrest, and the search incident to arrest of the vehicle and his person was a valid search.

6. Ms. Harrell was validly arrested for carrying a concealed weapon in a car and taken back to the precinct. She was interviewed by officer [first name] Wiencek. The testimony about whether Ms. Harrell gave consent to search the house was inconsistent, and the Court found that there was no consent to search the house. The Court also found that permission was not given to do a protective sweep of the house.

7. If a protective sweep had been appropriate under the law absent consent, the scope of the protective sweep was proper, to the extent that it was limited and not intrusive to the point where there was an effort to search in places where an individual would not be able to conceal himself.

The Court directed that the supplemental briefs address these questions: (a) whether the officers had a right to conduct a protective sweep of the house on Patton Street absent consent; (b) if they did not, whether the information in the search warrant affidavit, absent the information about the guns in the closet, was sufficient to establish probable cause to support the search warrant; and (c) whether the inevitable discovery rule permitted seizure of the guns discovered during the protective sweep and seized after the search warrant was issued.

<div align="center">II.</div>

A. The "Protective Sweep"

In its supplemental brief, the government continues to argue that Ms. Harrell gave consent to perform the protective sweep while the police were waiting for the search warrant. However, the Court has ruled already that consent was not given. In fact, the government asked the Court for clarification on that point at the hearing, and the Court explained that it found credible the testimony of Ms. Harrell that she did not consent. It follows, of course, that the Court found — and does find — that officer James Pierce's testimony to the contrary was not credible. The Court has ruled twice previously that the sweep was performed without consent. The government's argument pressing that point again in the absence of an actual motion for reconsideration is impertinent.

Of course, warrantless searches of a home are presumptively unreasonable. *El Bey v. Roop*, 530 F.3d 407, 419-20 (6th Cir. 2008) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)); *see also United States v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009) (noting that the government bears the burden of proving the constitutionality of a protective sweep). However, even in the absence of consent, the Supreme Court has created a limited exception authorizing police officers "making arrests in the home to conduct a 'protective sweep' — a 'quick and limited search of the premises,

incident to an arrest and conducted to protect the safety of the police officers and others.'" *United States v. Stover*, 474 F.3d 904, 911 (6th Cir. 2007) (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). The *Buie* Court sanctioned protective sweeps in two discrete circumstances:

> First, during a search incident to an arrest occurring inside a home, officers may "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Second, officers may conduct a search more pervasive in scope when they have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."

*United States v. Colbert*, 76 F.3d 773, 776 (6th Cir. 1996) (quoting *Buie*, 494 U.S. at 334) (internal citations omitted). In *United States v. Archibald*, 589 F.3d 289 (6th Cir. 2009), the Sixth Circuit further explained:

> The first type of sweep requires no probable cause or reasonable suspicion, while the second requires articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. . . . The . . . second kind of sweep is not a full search of the premises, but extend[s] only to a cursory inspection of those spaces where a person may be found and should last no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

589 F.3d at 295 (internal citations and quotations omitted).

The Sixth Circuit has held that "reasonable possibilities that such persons are present and dangerous, as opposed to direct evidence, may justify protective sweeps." *Archibald*, 589 F.3d at 299 (distinguishing *United States v. Biggs*, 70 F.3d 913, 916 (6th Cir. 1995) (approving sweep based on several factors, including (1) police had received information that another person would be meeting the defendant at his motel room, and (2) the defendant had previously been arrested on two separate occasions, in the presence of someone with a firearm); *United States v. Atchley*, 474 F.3d

840, 844, 849-50 (6th Cir. 2007) (approving sweep of a motel room where police had received a tip that several individuals were manufacturing methamphetamine in the room, two of the defendant's companions had just escaped during a confrontation with police in the motel parking lot and may have reentered the room, and from outside the room police observed a handgun on the bed); and *United States v. Beasley*, 199 F. App'x 418, 423 (6th Cir. 2006) (unpublished) (approving sweep of motel room where the defendant was arrested in parking lot in possession of drugs and a firearm and officers saw another person looking out motel room window into parking lot), from situation where no evidence of dangerous third party existed). But police may not conduct a protective sweep when they have no information regarding the potential occupants of a residence. *Archibald*, 589 F.3d at 300 ("[A]llowing the police to justify a protective sweep on the ground that they had no information at all is directly contrary to the Supreme Court's explicit command in *Buie* that the police have an articulable basis on which to support their reasonable suspicion of danger from inside the home.").

In addition, the Sixth Circuit has held that a protective sweep may be proper even if not incident to an arrest, *United States v. Taylor*, 248 F.3d 506, 513-14 (6th Cir. 2001) ("[T]he principle enunciated in *Buie* with regard to officers making an arrest — that the police may conduct a limited protective sweep to ensure the safety of those officers — applies with equal force to an officer left behind to secure the premises while a warrant to search those premises is obtained."), although not every circuit agrees, *United States v. Freeman*, 479 F.3d 743 (10th Cir. 2007) (holding that protective sweep only allowed incident to arrest). However, protective sweeps not incident to an arrest may only be conducted when the police have gained lawful entry to the premises. *See Archibald*, 589 F.3d at 297 (emphasizing, in *Taylor*, the importance of the defendant's brother's decision to consent to entry); *see also United States v. Roberts*, 612 F.3d 306, 311 (5th Cir. 2010)

(holding that the "police must not have entered (or remained in) the home illegally" for a protective sweep to be constitutionally valid); *United States v. Gandia*, 424 F.3d 255, 262 (2d Cir. 2005) (noting that courts that "have expanded *Buie* to authorize protective sweeps even when officers have not entered a suspect's home pursuant to an arrest warrant" have reasoned that "'police officers should be able to ensure their safety when they *lawfully* enter a private dwelling.'" (quoting *Leaf v. Shelnutt*, 400 F.3d 1070, 1087 (7th Cir. 2005) (emphasis added))).

In this case, the officers did not lawfully enter the premises when they conducted their protective sweep. Moreover, the person having the greatest potential for dangerousness — the defendant, whom the informant described as possessing multiple weapons — already was in police custody. The government has not offered any evidence suggesting that an officer securing the premises from the *outside*, while waiting for the search warrant, was in danger from individuals *inside* the home. Consequently, the protective sweep in this case amounted to a warrantless search, albeit a limited one, of a home. The Supreme Court repeatedly has emphasized that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton*, 445 U.S. at 585. The protective sweep in this case, conducted without consent, violated the Fourth Amendment.

B. Validity of the Search Warrant

The defendant attacks the search warrant affidavit as failing to contain information from which a magistrate could assess the reliability of the informant. In support, he cites Michigan Compiled Laws § 780.653, which states that a judge's finding of probable cause may be based on an affidavit that relies on an unnamed source only if there are "affirmative allegations from which

the magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable."

However, the validity of a search warrant turns solely on compliance with the Fourth Amendment, not on state law. *Virginia v. Moore*, 553 U.S. 164, 174 (2008); *United States v. Franklin*, 284 F. App'x 266, 269-71 (6th Cir. 2008); *United States v. Wright*, 16 F.3d 1429, 1434 (6th Cir. 1994). A search warrant must (1) "be issued by a neutral and detached magistrate," *Franklin*, 284 F. App'x at 271 (citing *Johnson v. United States*, 333 U.S. 10, 14 (1948)), and (2) be based on probable cause. *Id.* at 271 n.4 (citing U.S. Const. amend. IV).

> Probable cause exists "when there is a 'fair probability' . . . that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). In other words, a magistrate need only find "reasonable grounds for belief" that evidence will be found in order to justify the issuance of a search warrant. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). When an affidavit is the basis for a probable cause determination, the affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). Search warrant affidavits are to be judged on the totality of the circumstances, not line-by-line scrutiny. *Id.*; *see also United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

*United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010).

The affidavit in this case included information discovered by the police during the protective sweep, which the Court has determined to have been discovered illegally. Consequently, that information cannot be used to support the search warrant. *See United States v. Davis*, 430 F.3d 345, 357-58 (6th Cir. 2005). The remedy is to "remove th[ose] fact[s] from the affidavit when considering whether there is still sufficient information to establish probable cause to" issue the search warrant. *Ibid.* (citing *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001), and *United States v. Reilly*, 76 F.3d 1271, 1282-83 n.2 (2d Cir. 1996)). The defendant contends that the police

officer's affidavit cannot measure up to the probable cause standard, absent the information about the guns in the closet. The Court disagrees.

The information given the officer by the confidential informant, taken at face value, was sufficient to establish that evidence of crimes would be found in the house. It is true that when the affiant relies on a confidential informant, the court "must consider the veracity, reliability, and basis of knowledge for that information as part of the totality-of-the-circumstances review. *Thomas*, 605 F.3d at 307. And when the police rely on an untested informant, the affiant "should indicate that the police corroborated significant parts of the informant's story." *Thomas*, 605 F.3d at 307; *see also United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) ("While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration.").

In this case, the subsequent investigation significantly corroborated the informant's information, as the affidavit states. Officer Wiencek's affidavit averred that an unnamed and unused source informed him that (1) an individual "known only as 'Ton' was selling [narcotics and firearms] from a house on the North East corner of Patton and W. Chicago," (2) the "house could easily be identified by the Gray Dodge minivan in the driveway in clean factory condition . . . as well as a Gray two tone Ford explorer," (3) "'Ton' sells crack cocaine off a 'dope mic' telephone," (4) "'Ton' also has multiple firearms and keeps two handguns in the center counsel of the minivan behind the radio . . . a Kimber and the other a Ruger," (5) "'Ton' has multiple guns split between two narcotics locations, one the Patton location," (6) the source has seen one fully automatic .380 caliber," and (7) that "Ton" has several assault rifles and handguns. Pl.'s Resp. to Def.'s Mot. to

-11-

Suppress, Ex. 1, Search Warrant Aff. of Wiencek. Officer Wiencek's affidavit adequately described the investigatory efforts that corroborated the informant's information. First, the affidavit described the traffic stop of the Dodge minivan driven by Kristy Harrell, the defendant's girlfriend, during which the police discovered a Kimber handgun behind the radio. Second, it stated that Kristy Harrell affirmed that the defendant used the names "Ton" and "Grip". Third, the affidavit described the traffic stop of a gray Ford Explorer, driven by the defendant, during which the police found crack cocaine, a 5.5.7 bullet, and $1,470. Moreover, the search warrant itself explained that both Kristy Harrell's and the defendant's driver licenses list the Patton residence as their home and that Wayne County tax records reveal that Kristy Harrell owns the home. The information in the affidavit, therefore, demonstrated the unused informant's reliability in a manner that allowed the magistrate to make an informed decision. The search warrant was supported by an affidavit establishing probable cause.

C.  Inevitable Discovery of the Firearms

Because the guns in the closet were discovered during the illegal protective sweep, the defendant argues that they should be excluded from evidence as the fruit of a Fourth Amendment violation. However, the inevitable-discovery doctrine serves as an exception to the exclusionary rule. *Murray v. United States*, 487 U.S. 533, 539 (1988); *United States v. Howard*, 621 F.3d 433, 451 (6th Cir. 2010). The Supreme Court has explained, "[s]ince the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." *Murray*, 487 U.S. at 539. Stated another way, "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep

that evidence from the jury in order to ensure the fairness of the trial proceedings." *Nix v. Williams*, 467 U.S. 431, 447 (1984). The government must establish the evidence's inevitable discovery by a preponderance of the evidence. *United States v. Quinney*, 583 F.3d 891, 893-94 (6th Cir. 2009). The Sixth Circuit has held that "[t]he government can satisfy its burden by showing that routine procedures that police would have used regardless of the illegal search would have resulted in the discovery of the disputed evidence." *United States v. Lazar*, 604 F.3d 230, 240 (6th Cir. 2010) (quoting *United States v. Ford*, 184 F.3d 566, 577 (6th Cir. 1999)).

The long guns found in the defendant's closet will not be suppressed because they would have been "discovered through sources 'wholly independent of any constitutional violation.'" *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) (quoting *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996)). A full search of the house was not performed until a search warrant was obtained. There is little doubt that the police officers would have discovered the long guns during the search. They were in plain view within the closet, and they were seized during the execution of the search warrant. The government has satisfied its burden that the firearms would have been discovered even if the protective sweep had not taken place.

### III.

The Court finds that the police had no consent to search or protectively sweep the house on Patton Street, and the evidence — the long guns — discovered during the sweep cannot be considered as part of the probable cause determination when assessing the search warrant's validity. However, even absent that illegally obtained information, the affidavit in support of the search warrant establishes probable cause. The guns would have been discovered inevitably when the valid search warrant was executed. Therefore, the exclusionary rule does not apply to them.

Accordingly, it is **ORDERED** that the defendant's motion to suppress evidence [dkt. #21] is **DENIED**.

<div style="text-align: right">

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

</div>

Dated: July 1, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 1, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL